UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00275-FDW-DCK

| | |
|---|---|
| ANNETTE WILLIAMS, individually and on behalf of all others similarly situated, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>MYLER DISABILITY, LLC, a Utah Company, )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Defendant's Motion to Dismiss (Doc. No. 10), seeking dismissal of Plaintiff's complaint for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1). The motion has been fully briefed, (Docs. Nos. 11, 15, 16), and is ripe for ruling. For the reasons below, Defendant's Motion is DENIED.

### I. BACKGROUND

Plaintiff filed this action on behalf of herself and others similarly situated seeking to recover from Defendant for violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). In her Complaint, Plaintiff contends that during a two-week period, she received two unsolicited text messages to her cell phone despite her registration on the National Do Not Call Registry. Plaintiff alleges the unsolicited text messages directed Plaintiff to call Defendant to apply for disability benefits. Plaintiff asserts she was harmed by this invasion of privacy and nuisance. Defendant moves to dismiss the Complaint, asserting Plaintiff has not alleged any concrete harm sufficient to confer Article III standing.

1

## II. STANDARD OF REVIEW

"In plain English, the TCPA prohibited almost all robocalls to cell phones." Barr v. Am. Ass'n of Political Consultants, Inc., 140 S. Ct. 2335, 2344, 207 L. Ed. 2d 784 (2020). The TCPA's prohibition on robocalls includes sending automated text messages. Id. n.1 (citing In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14115 (2003));[1] see also Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156, 136 S. Ct. 663, 667, 193 L. Ed. 2d 571 (2016), as revised (Feb. 9, 2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a "call" within the compass of § 227(b)(1)(A)(iii). For damages occasioned by conduct violating the TCPA, § 227(b)(3) authorizes a private right of action." (citation omitted)).[2]

---

[1] In enacting the TCPA in 1991, Congress authorized the Federal Communications Commission ("FCC") to "prescribe regulations to implement the requirements of this subsection." 47 U.S.C. § 227(b)(2). Over a decade later, in 2003, the FCC revisited the specifics of the TCPA in light of emerging technologies to "revise the current Telephone Consumer Protection Act (TCPA) rules and adopt new rules to provide consumers with several options for avoiding unwanted telephone solicitations." In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. at 14017. The FCC explained:
> It has now been over ten years since the Commission adopted a broad set of rules that respond to Congress's directives in the TCPA. Over the last decade, the telemarketing industry has undergone significant changes in the technologies and methods used to contact consumers. The Commission has carefully reviewed the record developed in this rulemaking proceeding. The record confirms that these marketplace changes warrant modifications to our existing rules, and adoption of new rules if consumers are to continue to receive the protections that Congress intended to provide when it enacted the TCPA.

Id. As part of that Order, the FCC made clear that text messages fall within the "call" restrictions covered by the TCPA.
> We affirm that under the TCPA, it is unlawful to make any call using an automatic telephone dialing system or an artificial or prerecorded message to any wireless telephone number. Both the statute and our rules prohibit these calls, with limited exceptions, "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other common carrier service, or any service for which the called party is charged." *This encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls*, provided the call is made to a telephone number assigned to such service.

Id. (Emphasis added.).

[2] In addition to the Supreme Court and the FCC, Congress has also made clear the TCPA's applicability to text messages. *Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act*, PL 116-105, December 30, 2019, 133 Stat 3274 (recognizing that text messages are covered in §227(b) in providing for streamlined information sharing with the FCC relating to "a call made or a text message sent in violation of subsection (b)").

In order to seek redress under the TCPA, the requirement to sue is no different than any other federal case: a party must have standing.

> Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their authority as it has been traditionally understood. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. In this way, the law of Article III standing . . . serves to prevent the judicial process from being used to usurp the powers of the political branches, . . . and confines the federal courts to a properly judicial role . . . .
>
> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must clearly . . . allege facts demonstrating each element.

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) (internal quotations and citations omitted); see also Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 652 (4th Cir.) ("These traditional requirements of standing—injury-in-fact, redressability, and traceability—apply to causes of action created by statute."), cert. denied, 140 S. Ct. 676, 205 L. Ed. 2d 440 (2019).

A "concrete" injury must be "real" rather than "abstract"—that is, "it must actually exist." Spokeo, 136 S. Ct. at 1548. As the Fourth Circuit recognized in Krakauer, the Spokeo decision reinforces the core requirement that litigants suffer a concrete injury and cannot bring suit based solely on failure to act in accordance with the statute: "Private litigation, even if authorized by statute to serve a range of public ends, must vindicate the plaintiffs' interests, rather than serve solely a vehicle for ensuring legal compliance." Krakauer, 925 F.3d at 653; see also Baehr v. Creig Northrop Team, P.C., 953 F.3d 244, 252 (4th Cir. 2020) ("[W]hen a plaintiff sues to vindicate a

3

Case 3:20-cv-00275-FDW-DCK   Document 20   Filed 11/12/20   Page 3 of 11

statutory right, she still must establish that she suffered a concrete injury from the violation of that right. That is, a plaintiff cannot merely allege a bare procedural violation, divorced from any concrete harm and satisfy the injury-in-fact requirement of Article III.") (quotation omitted), cert. denied sub nom. Baehr, Patrick, et ux. v. Creig Northrop Team, et al., No. 20-174, 2020 WL 5883390 (U.S. Oct. 5, 2020); Thole v. U. S. Bank N.A., 140 S. Ct. 1615, 1620–21, 207 L. Ed. 2d 85 (2020) ("The Court has emphasized that "Article III standing requires a concrete injury even in the context of a statutory violation." (citing Spokeo, 578 U. S., at ——, 136 S.Ct., at 1549).

The issue before this Court is whether the two unsolicited text messages received by Plaintiff establish a concrete injury under the TCPA. This is an issue of first impression in the Fourth Circuit. Defendant urges this Court to adopt the reasoning from the Eleventh Circuit where the court, after considering congressional judgment and historical practice, concluded the receipt of a single, unsolicited text message was insufficient to confer standing for the plaintiff.

> In sum, we find that history and the judgment of Congress do not support finding concrete injury in Salcedo's allegations. Salcedo has not alleged anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing of the telephone. Nor has he alleged that his cell phone was searched, dispossessed, or seized for any length of time. Salcedo's allegations of a brief, inconsequential annoyance are categorically distinct from those kinds of real but intangible harms. The chirp, buzz, or blink of a cell phone receiving a single text message is more akin to walking down a busy sidewalk and having a flyer briefly waived in one's face. Annoying, perhaps, but not a basis for invoking the jurisdiction of the federal courts. All told, we conclude that Salcedo's allegations do not state a concrete harm that meets the injury-in-fact requirement of Article III.

Salcedo v. Hanna, 936 F.3d 1162, 1172 (11th Cir. 2019).

Notably, the Second, Seventh, and Ninth Circuits have decided this issue differently, instead explaining that Congress, by enacting the TCPA, recognized the receipt of unsolicited text messages to be a concrete harm sufficient to confer standing to the plaintiffs who received the

4

messages. Van Patten v. Vertical Fitness Grp., LLC, 847 F.3d 1037 (9th Cir. 2017) (holding the plaintiff had standing under TCPA to sue for his receipt of two unsolicited text messages from the defendant); Melito v. Experian Mtkg. Sols., Inc., 923 F.3d 85, 88 (2d Cir. 2019) (holding the plaintiffs' "receipt of unsolicited text messages, sans any other injury, is sufficient to demonstrate injury-in-fact" under TCPA) cert. denied sub nom. Bowes v. Melito, 140 S. Ct. 677, 205 L. Ed. 2d 440 (2019); Gadelhak v. AT&T Servs., Inc., 950 F.3d 458 (7th Cir. 2020) (holding the plaintiff had standing to sue under TCPA for her receipt of five unsolicited text messages from the defendant).

The Ninth Circuit was the first circuit court to consider standing under the TCPA as it relates to receipt of unsolicited text messages. The Van Patten court explained:

> The TCPA establishes the substantive right to be free from certain types of phone calls and texts absent consumer consent. Congress identified unsolicited contact as a concrete harm, and gave consumers a means to redress this harm. We recognize that Congress has some permissible role in elevating concrete, de facto injuries previously inadequate in law "to the status of legally cognizable injuries." Spokeo, 136 S.Ct. at 1549 (quoting Lujan, 504 U.S. at 578, 112 S.Ct. 2130). We defer in part to Congress's judgment, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements." Id. We also recognize that "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id.
>
> …
>
> Unlike in Spokeo, where a violation of a procedural requirement minimizing reporting inaccuracy may not cause actual harm or present any material risk of harm, see id. at 1550, the telemarketing text messages at issue here, absent consent, present the precise harm and infringe the same privacy interests Congress sought to protect in enacting the TCPA. Unsolicited telemarketing phone calls or text messages, by their nature, invade the privacy and disturb the solitude of their recipients. A plaintiff alleging a violation under the TCPA "need not allege any additional harm beyond the one Congress has identified." Id. at 1549 (emphasis in original).

5

847 F.3d at 1043. The Second Circuit followed this reasoning: "First, the nuisance and privacy invasion attendant on spam texts are the very harms with which Congress was concerned when enacting the TCPA. Second, history confirms that causes of action to remedy such injuries were traditionally regarded as providing bases for lawsuits in English or American courts. Plaintiffs were therefore not required to demonstrate any additional harm." Melito, 923 F.3d at 88. The Seventh Circuit has explained the distinction of these lines of cases in contrast to the Eleventh Circuit's Salcedo decision:

> The Eleventh Circuit treated the injury in its case as abstract partly because common law courts generally require a much more substantial imposition—typically, many calls—to support liability for intrusion upon seclusion. See, e.g., Sofka v. Thal, 662 S.W.2d 502, 511 (Mo. 1983). But when Spokeo instructs us to analogize to harms recognized by the common law, we are meant to look for a "close relationship" in kind, not degree. See 136 S. Ct. at 1549. In other words, while the common law offers guidance, it does not stake out the limits of Congress's power to identify harms deserving a remedy. Congress's power is greater than that: it may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." Id. (alteration in original) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 578, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). A few unwanted automated text messages may be too minor an annoyance to be actionable at common law. But such texts nevertheless pose the same kind of harm that common law courts recognize—a concrete harm that Congress has chosen to make legally cognizable. Van Patten, 847 F.3d at 1043.
>
> We therefore agree with the Second and Ninth Circuits that unwanted text messages can constitute a concrete injury-in-fact for Article III purposes.

Gadelhak, 950 F.3d at 462–63 (citing Melito, 923 F.3d 85; Van Patten, 847 F.3d 1037).

Although the Fourth Circuit has not squarely addressed standing to sue under the TCPA for receipt of unwanted text messages, this Court finds persuasive the Fourth Circuit's favorable citation to the Ninth Circuit's Van Patten decision in analyzing standing for a recipient of a telephone call under a different provision of the TCPA. Krakauer, 925 F.3d at 653 ("The

6

straightforward application of Spokeo thus neatly resolves this matter, as many other courts have held in similar settings." (citing, *inter alia*, Van Patten, LLC, 847 F.3d at 1043)). In Krakauer, the Fourth Circuit concluded the plaintiff (and class) had standing to sue for receipt of unsolicited phone calls and explained: "[T]he TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." 925 F.3d at 650. The private right of action under the TCPA "plainly satisfies the demands of Article III," and the plaintiff's alleged harm is not required to reach a level that would support a common law cause of action. Id. at 653–54. A court need not therefore scrutinize the level–or degree–of harm caused by the illegal communication; instead the plaintiff's alleged receipt of prohibited communications is paramount in the standing analysis.

> [The plaintiffs'] claim under § 227(c)(5) accrues only once a telemarketer disregards the registry and actually places multiple calls. Since that harm is both particular to each person and imposes a concrete burden on his privacy, it is sufficient to confer standing. The appellant's suggestion otherwise is nothing more than an attempt to dismember the TCPA, *converting a simple remedial scheme into a fact-intensive quarrel over how long a party was on the line or how irritated it felt when the phone rang*. Obviously, Congress could have created such a cumbersome scheme if it wanted to. It instead opted for a more straightforward and manageable way of protecting personal privacy, and the Constitution in no way bars it from doing so.

Id. at 654 (emphasis added). This reasoning mirrors that of the Second, Seventh, and Ninth Circuits where the courts considered standing under the TCPA specifically in the context of receipt of text messages under §227(b). See Van Patten, 847 F.3d 1037; Melito, 923 F.3d 85; Gadelhak, 950 F.3d 458. The Krakauer analysis is also in stark contrast to the Salcedo reasoning focusing on the lack of specifics related the TCPA violation. Where Krakauer instructs against a fact-intensive quarrel, Salcedo found problematic the plaintiff's failure to allege "anything like enjoying dinner at home with his family and having the domestic peace shattered by the ringing

7

of the telephone" or that "his cell phone was searched, dispossessed, or seized for any length of time." 936 F.3d at 1172. Absent precedent to the contrary, Krakauer's reasoning and citation to the Van Patten case signal the Fourth Circuit would likely agree with the reasoning from the Second, Seventh, and Ninth Circuits as it pertains to standing to sue based on receipt of text messages in violation of the TCPA. Bearing these principles in mind, the Court turns to the parties' arguments.

### III. ANALYSIS

Defendant contends the alleged TCPA violation of sending two unsolicited text messages during a two-week period is an insufficient concrete injury to confer standing here. In support, Defendant argues, much like the Seventh Circuit held in Salcedo, the "brief, inconsequential annoyance" resulting from receipt of a text message fails to rise to the level of a "real but intangible harm." Salcedo, 936 F.3d at 1172. Plaintiff, on the other hand, follows the reasoning from the Second, Seventh, and Ninth Circuits, arguing that receipt of automated text messages invade a person's privacy and are a nuisance that establish Article III standing to pursue TCPA claims. In light of the allegations in the case at bar, this Court is persuaded by Plaintiff's arguments and authorities cited in support.

First, unlike the plaintiff in Salcedo who alleged a *single* text message conferred standing, Plaintiff here alleges she received *multiple* unsolicited text messages within a two-week time period. Indeed, Salcedo's concurring opinion recognized the limitations of the court's decision.

> I agree with the majority opinion that we lack subject matter jurisdiction because Salcedo has no standing to bring a TCPA claim. I write separately to emphasize my understanding that the majority's holding is narrow and the conclusion that Salcedo lacks standing is driven by the allegations in his complaint that Hanna sent him only one text message. The majority opinion—appropriately, in my view—leaves unaddressed whether a plaintiff who alleged that he had received multiple unwanted

8

and unsolicited text messages may have standing to sue under the TCPA. With this understanding, I concur in the majority's judgment.

936 F.3d at 1174 (Pryor, J., concurring). Others on the Eleventh Circuit have recognized this distinction. Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 999 (11th Cir. 2020) ("[T]his Court relied on those findings in holding that the receipt of unwanted phone *calls* is a concrete injury, Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1270 (11th Cir. 2019), but the receipt of a *single unwanted text message* is not, Salcedo, 936 F.3d at 1169–70.") (emphasis added)). For this reason, this Court finds Defendant's reliance on Salcedo misplaced.

The Court also finds problematic Salcedo's discussion of congressional intent regarding text messaging where the Supreme Court has at least twice recognized text messaging to be covered by the TCPA. Salcedo states:

> On text messaging generally, then, the judgment of Congress is ambivalent at best; its privacy and nuisance concerns about residential telemarketing are less clearly applicable to text messaging. Any possible deference to the FCC's interpretation of the TCPA—the source of its application to text messaging—is not obviously relevant where the Supreme Court has specifically instructed us to consider the judgment of Congress. And congressional silence is a poor basis for extending federal jurisdiction to new types of harm. We take seriously the silence of that political branch best positioned to assess and articulate new harms from emerging technologies. See Spokeo, 136 S. Ct. at 1549, 1170 (citing Lujan, 504 U.S. at 578, 112 S.Ct. 2130)).

Salcedo, 936 F.3d at 1169–70; but see Barr, 140 S. Ct. at 2344 n.1 ("The robocall restriction, as implemented by the Federal Communications Commission, bars both automated voice calls and automated text messages."); Campbell-Ewald Co, 577 U.S. at 156 ("A text message to a cellular telephone, it is undisputed, qualifies as a "call" within the compass of § 227(b)(1)(A)(iii).").

Having concluded receipt of unsolicited text messages–just as the receipt of unsolicited calls–can form the basis for suite under the TCPA, the Court turns to whether Plaintiff here has

9

standing. The Fourth Circuit has recognized receipt of unwanted phone calls in violation of the TCPA "plainly satisfies the demands of Article III." Krakauer at 653–54. While analyzing a different type of TCPA violation than alleged here, the court acknowledged the Article III standing inherent within the statute as it relates to §227(c) and its protection of subscriber privacy rights.

> "Traditional principles of statutory interpretation" leave no doubt as to the right answer here. *The private right of action allows suit by any "person" who "received" calls that were placed "in violation of" the TCPA regulations.* 47 U.S.C. § 227(c)(5). Its coverage is clear, as are its limits. The text of the TCPA notes that it was intended to protect "consumers," not simply "subscribers," who were "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102-243, § 2(6). It protects these persons from "[u]nrestricted telemarketing," which "can be an intrusive invasion of privacy." Id. § 2(5). A non-subscriber who receives a call can suffer a privacy intrusion just as easily as a subscriber can. The extensive legislative history accompanying the TCPA confirms its broad reach. See Leyse v. Bank of Am. Nat'l Ass'n, 804 F.3d 316, 325-26 (3d Cir. 2015) (interpreting the TCPA's robocalling cause of action).

Krakauer, 925 F.3d at 656–57 (emphasis added). In interpreting who and what the TCPA covers, the Fourth Circuit recognized the "broad reach" of the statute and a "simple remedial scheme" for the plaintiffs to recover for violations. Id. Krakauer leads this Court to believe the Fourth Circuit's analysis of standing for Plaintiff here under §227(b) would likely follow that of the Second, Seventh, and Ninth Circuits where the courts found standing to exist under the TCPA specifically in the context of receipt of text messages. See Van Patten, 847 F.3d 1037; Melito, 923 F.3d 85; Gadelhak, 950 F.3d 458.

Reading together other courts' interpretations of the TCPA and extending relevant Fourth Circuit precedent related to receipt of calls under the TCPA, the Court finds Plaintiff's receipt of Defendant's two unsolicited text messages asking Plaintiff to call Defendant to apply for disability benefits are the kind of harm the TCPA protects against. The Complaint asserts that as a result of Defendant's TCPA violations, Plaintiff (and the proposed class) suffered *intangible* harm

10

including "annoyance, nuisance and invasion of privacy" and "mental duress," as well as *tangible* harm including "wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone." (Doc. No. 1, p. 9.) Plaintiff's allegations here go beyond asserting a bare statutory violation and allege: 1) an actual, individual, concrete injury that is the kind of harm Congress chose to make legally cognizable under the TCPA; 2) that is "fairly traceable to the challenged conduct" that Defendant is alleged to have committed; and 3) based on the statutory remedies available, "is likely to be redressed by a favorable judicial decision." Spokeo, 136 S. Ct. at 1547. Plaintiff therefore has standing to sue.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (Doc. No. 10) is DENIED.

IT IS SO ORDERED.

Signed: November 12, 2020

Frank D. Whitney
United States District Judge